FILED
2017 Aug-07 AM 10:33
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **RACHEL DANIELLE ARTH,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 4:16-cv-00802-JEO |
| ) | |
| **NANCY A. BERRYHILL,** ) | |
| **Acting Commissioner of** ) | |
| **Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

## **MEMORANDUM OPINION**

Plaintiff Rachel Danielle Arth brings this action seeking judicial review of a final adverse decision of the Acting Commissioner of the Social Security Administration ("Commissioner")[1] denying her applications for supplemental security income, a period of disability, and disability insurance benefits. (Doc. 1).[2] The case has been assigned to the undersigned United States Magistrate Judge pursuant to this court's general order of reference. The parties have consented to

---

[1] Nancy A. Berryhill was named the Acting Commissioner on January 23, 2017. See https://www.ssa.gov/agency/commissioner.html. Under 42 U.S.C. § 405(g), "[a]ny action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office." Accordingly, pursuant to 42 U.S.C. § 405(g) and Rule 25(d) of the Federal Rules of Civil Procedure, the Court has substituted Nancy A. Berryhill for Carolyn W. Colvin in the case caption above and **HEREBY DIRECTS** the clerk to do the same party substitution on CM/ECF.

[2] References herein to "Doc(s). __" are to the document numbers assigned by the clerk to the pleadings, motions, and other materials in the court file, as reflected on the docket sheet in the court's Case Management/Electronic Case Files (CM/ECF) system.

the exercise of final jurisdiction by the magistrate judge under 28 U.S.C. § 636(c). (Doc. 13). Upon review of the record and the relevant law, the undersigned finds that the Commissioner's decision is due to be affirmed.

## I. PROCEDURAL HISTORY

On June 25, 2012, Arth filed an application for supplemental security income. (R. 69).[3] On July 20, 2012, she filed an application for a period of disability and disability insurance benefits. (Doc. 70). In both applications, Arth alleged disability beginning January 1, 2004. (R. 69-70). Following the initial denial of her applications, Arth requested a hearing before an Administrative Law Judge ("ALJ"). (R. 68). The hearing was held on July 31, 2014. (R. 23-56). Arth, her counsel, and a vocational expert attended the hearing. (R. 23). The ALJ issued a decision on August 29, 2014, finding that Arth was not entitled to benefits. (R. 10-18). The Appeals Council denied Herndon's request for review. (R. 1-5) Arth then filed this action for judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II. STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of the court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal

---

[3] References herein to "R.__" are to the page number of the administrative record, which is located at Docs. 5-1 through 5-13.

standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

The court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability insurance benefits and supplemental security income under the Social Security Act, a claimant must show the inability to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3); 42 U.S.C. § 1382c(a)(3)(D).

Determination of disability under the Social Security Act requires a five step analysis. 20 C.F.R. § 404.1520(a). Specifically, the Commissioner must determine in sequence:

> whether the claimant: (1) is unable to engage in substantial gainful activity; (2) has a severe medically determinable physical or mental impairment; (3) has such an impairment that meets or equals a Listing and meets the duration requirements; (4) can perform [her] past relevant work, in light of [her] residual functional capacity; and (5) can make an adjustment to other work, in light of [her] residual functional capacity, age, education, and work experience.

*Evans v. Comm'r of Soc. Sec.*, 551 F. App'x 521, 524 (11th Cir. 2014)[4] (citing 20 C.F.R. § 404.1520(a)(4)). The claimant bears the burden of proving that she is disabled within the meaning of the Social Security Act. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). The regulations "place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Id*.

---

[4] Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36-2.

## IV. FINDINGS OF THE ALJ

Arth was 30 years old at the time of her hearing before the ALJ. (R. 29). She has a high school education and past work as a server and cashier. (R. 31, 50). She alleged in her disability report that she had been unable to work since January 1, 2004, due to bipolar disorder, obsessive-compulsive disorder, and "Perthes disease" of the legs and hips. (R. 186, 191, 213). She was last insured for Social Security disability insurance benefits through June 30, 2004. (R. 213).

The ALJ found that Arth has the following severe impairments: bipolar disorder, attention deficit hyperactivity disorder (ADHD), insomnia, and polysubstance drug abuse in remission.[5] (R. 12). The ALJ further found that Arth's impairments, individually and in combination, did not meet or medically equal any listed impairment. (R. 13). Considering all of Arth's symptoms, the ALJ found that Arth retained the residual functional capacity[6] ("RFC") to perform medium work with the following restrictions: she can never climb ladders and scaffolds; she should never be exposed to unprotected heights, dangerous tools, dangerous machinery, or hazardous processes; she should never operate commercial vehicles; she can be exposed to occasional vibrations and moderate noise levels in the workplace; she should be limited to simple, repetitive tasks; she

---

[5] The ALJ found that Arth's "Legg-Calve-Perthes" syndrome is not a severe impairment. (R. 13). Arth has not challenged this finding.

[6] Residual functional capacity is the most a claimant can do despite her impairment(s). *See* 20 C.F.R. § 404.1545(a)(1).

cannot maintain a production rate pace that would be expected of assembly line work, but can perform other goal-oriented work; she should be limited to simple, work-related decisions; she can tolerate occasional exposure to supervisors and co-workers, but should not have interaction with the general public; she can accept constructive, non-confrontational criticism; she can work in small group settings; she can accept changes in the workplace if introduced gradually and infrequently; and she would be off-task approximately five percent of the regular eight-hour workday (non-consecutive minutes). (R. 14).

Based on the testimony of the vocational expert, the ALJ found that Arth is unable to perform her past relevant work. (R. 16, 52). He further found, however, that Arth is capable of performing other jobs that exist in significant numbers in the national economy, including night cleaner, merchandise price marker, and salvage laborer. (R. 17, 53-54). The ALJ concluded that Arth has not been under a disability from January 1, 2004, through the date of his decision. (R. 18).

## V. DISCUSSION

Arth contends that the Commissioner's decision should be reversed and the case remanded "for further consideration and/or evaluation of [her] bipolar condition." (Doc. 10 at 12). She offers two alternative arguments, both related to the ALJ's observation that "there are no medical source statements in [Arth's] file." (R. 16). First, Arth argues that "[her] treating physicians have opined that

6

[her] bipolar condition is disabling" and that the ALJ erred "in not giving great weight to those opinions." (Doc. 10 at 10). Alternatively, Arth argues that if there are in fact no medical source statements in her file, then the ALJ erred "by not ordering a consultative psychological examination of [her]." (*Id.*) The Commissioner argues that substantial evidence supports the ALJ's decision that Arth is not disabled.[7] (Doc. 9 at 4-12).

## A. Arth's Claim for Disability Insurance Benefits

As an initial matter, the Court notes that Arth has not challenged (at least not directly) the ALJ's decision denying her claim for disability insurance benefits ("DIB"). To be eligible for DIB, a claimant must prove that she became disabled on or before her date last insured. *See Moore*, 405 F.3d at 1211 ("For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured." (citing 42 U.S.C. § 423(a)(1)(A)). Here, the ALJ determined that "[r]egarding [Arth's claim for a] period of disability and disability insurance benefits, … there are no medical sources to provide records prior to the date last insured, June 30, 2004, and her claim is due to be denied." (R. 16). Arth does not dispute this determination. Indeed, the administrative record contains no medical records from January 1, 2004 (her alleged onset date) to December 4, 2009, when she was treated for an upper respiratory infection and

---

[7] The Court notes that the Commissioner submitted her brief before Arth submitted her brief. As a consequence, the Commissioner's brief does not respond directly to Arth's arguments.

cervicalgia at Quality of Life Health Services ("Quality of Life"). (R. 302-04). In particular, there are no medical records indicating that Arth ever sought or received any treatment for any mental health issues, including bipolar disorder, during this nearly six-year period.[8] Accordingly, the ALJ's decision to deny Arth's claim for disability insurance benefits is due to be affirmed.

B.    **Arth's Claim for Supplemental Security Income Benefits**

For supplemental security income ("SSI") claims, "a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file." *Moore*, 405 F.3d at 1211 (citing 20 C.F.R. § 416.202-03). Arth filed her application for SSI benefits on June 25, 2012. Therefore, in order to be entitled to SSI benefits, Arth had to establish that she was disabled from June 2012 through the date of the ALJ's decision, August 29, 2014. Substantial evidence supports the ALJ's decision that Arth was not disabled during this period.

   1.    **No Medical Source Statements**

The ALJ stated in his decision that "there are no medical source statements in [Arth's] file." (R. 16). Arth challenges this statement, arguing that her treating physicians have "opined" in their medical records that her bipolar disorder is "disabling." (Doc. 10 at 10). She contends that the ALJ erred in not giving great weight to these "opinions." (*Id.*) The Court does not agree.

---

[8] In fact, it was not until April 2010 that Arth first sought treatment at Quality of Life for a mental health issue (depression). (R. 315-16).

Medical opinions are "statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 416.927(a)(1). Medical source statements, in turn, are "medical opinions submitted by acceptable medical sources, including treating sources and consultative examiners, about what an individual can still do despite a severe impairment(s), in particular about an individual's physical or mental abilities to perform work-related activities on a sustained basis." Social Security Ruling (SSR) 96-5p, 1996 WL 374183, *4 (July 2, 1996) (footnote omitted).

Here, contrary to Arth's contention in her brief, there are no medical opinions or medical source statements from any of her treating physicians (or from any other acceptable medical sources) to the effect that her bipolar disorder is disabling. It is true that her treating physicians have assessed her bipolar disorder as "manic" and "severe." The ALJ noted as much in his decision:

> … There is no record of mental health treatment until July 19, 2011, at Cherokee Etowah DeKalb Mental Health Center. [Arth] was given an initial diagnosis under Axis I of Bipolar I, most recent episode mixed, severe, without psychotic features and obsessive-compulsive disorder by history. These records show two appointments, but note non-compliance with treatment. …
>
> [Arth] began psychiatric treatment at Quality of Life [Health] Services on September 27, 2010. She was initially diagnosed under Axis I with ADHD, predominantly hyperactive-impulsive and major

9

depression, recurrent, moderate. On January 28, 2011, her diagnoses under Axis I were updated to bipolar, manic; obsessive-compulsive disorder; and post-traumatic stress disorder. On April 7, 2011, the diagnoses were upgraded to bipolar, manic and obsessive-compulsive disorder. He[r] most current diagnoses as of May 7, 2014, under Axis I are Bipolar I mixed, severe, with psychotic features and obsessive-compulsive disorder.

(R. 15-16) (exhibit references omitted). However, none of Arth's treating physicians ever opined that her bipolar disorder is disabling or expressed any opinion on the work she can or cannot perform despite her bipolar disorder. There is nothing in the record to suggest that any of Arth's treating physicians ever assessed her bipolar disorder as a disabling impairment rendering her incapable of performing any work-related activities.[9] None of her treating physicians ever expressed such an opinion.

To the extent Arth argues that the ALJ erred in not giving "great weight" to the opinions of her treating physicians, the Court notes that the ALJ did find that Arth's bipolar disorder and ADHD are severe impairments (R. 12), which is consistent with her treating physicians' diagnoses. Based on that finding, the Court is satisfied that the ALJ gave the evidence from Arth's treating physicians

---

[9] The Court does note that as of July 13, 2012, Arth's therapy treatment plan at Quality of Life, which was authored by Licensed Clinical Social Worker Kristy Phillips, included "[f]ind employment" as one of Arth's goals, with a target date of January 13, 2013. (R. 416). This goal necessarily implies that Arth was not considered disabled at that time. The Court also notes that Arth's revised treatment plan dated February 8, 2013—and all subsequent treatment plans—reflects that Arth's goal to "find employment" had a "[r]esolved date" of February 8, 2013. (R. 496). Because it is undisputed that Arth remained unemployed, it is unclear what the notation "resolved" means.

great weight, despite the ALJ's failure to expressly state that he was doing so.[10]
*See Horowitz v. Comm'r of Soc. Sec.*, -- F. App'x -- , 2017 WL 2417864, *6, n.4 (11th Cir. June 5, 2017) ("[The claimant] … argues that the case should be remanded to the ALJ because it is impossible to determine from the ALJ's opinion whether she assigned significant weight or little weight to Dr. Sultana's opinions. Certainly, remand is required if we are 'unable to determine whether the ALJ ... gave the treating [source's] evidence substantial or considerable weight or found no good cause to do so.' " *Wiggins v. Schweiker*, 679 F.2d 1387, 1390 (11th Cir. 1982). Because we can discern that the ALJ gave Dr. Sultana's opinion little weight, not remand is required.") In this case, the court can discern that the ALJ considered the evidence from Arth's physicians, a remand is not necessary.

### 2. The ALJ's Failure to Order a Consultative Psychological Exam

In the alternative, Arth argues that if there are no medical source statements in her file—as discussed above, there are none—then the ALJ erred in not ordering a consultative psychological examination of her. (Doc. 10 at 10). Again, the Court does not agree.

---

[10] Additionally, the Court notes that an ALJ is not required to discuss every piece of evidence in detail. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) ("there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision, … , is not a broad rejection which is 'not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole.'" (quoting *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995) (internal quotation omitted)).

11

"It is well-established that the ALJ has a basic duty to develop a full and fair record." *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995). However, an ALJ "is not required to order a consultative examination as long as the record contains sufficient evidence for the [ALJ] to make an informed decision." *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1269 (11th Cir. 2007). The test for determining whether an ALJ committed error in failing to develop the record requires "a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [Commissioner] for further development of the record." *Graham v. Apfel,* 129 F.3d 1420, 1423 (11th Cir. 1997).

Here, Arth has failed to demonstrate how a consultative psychological examination was necessary for the ALJ to make an informed decision or to fully develop the record. The Court finds that the record contained sufficient evidence to support the ALJ's determination that Arth is capable of performing medium work (with multiple restrictions) notwithstanding her bipolar disorder and other impairments.

The record includes the opinions of State agency medical consultant Samuel Williams, M.D., who reviewed Arth's medical records in November 2012. (R. 71-92). State agency medical consultants such as Dr. Williams are "highly qualified physicians … who are experts in the evaluation of the medical issues in disability

claims" and ALJs "may not ignore [their] opinions …." SSR 96-6p, 1996 WL 374180, *2 (July 2, 1996); *see* 20 C.F.R. § 416.913a(b)(1) ("State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation."). Dr. Williams assessed Arth's mental health issues using the Psychiatric Review Technique. (R. 76-77). He noted that Arth had diagnoses of bipolar disorder, mixed, with psychotic features; obsessive-compulsive disorder; and a history of drug use. (R. 77). He also noted that Arth currently attended a drug treatment program, that she was "improving with compliance to prescribed treatment and abstinence from [drug and alcohol] use," that she "recently presented with an appropriate affect, euthymic mood, intact memory, [and] cooperative [attitude]," and that her attention was "gained and maintained." (*Id.*) Dr. Williams concluded:

> … [Arth's] condition is expected to continue to improve with continued compliance to medical treatment. [Arth] appears to be suffering with a moderately severe … mental impairment and overall evidence indicate[s] [Arth] is capable of simple and minimally demanding employment as the extent of [her] impairment does not meet or equal any listing.

(*Id.*) Dr. Williams also performed a mental residual functional capacity assessment of Arth, and opined that Arth was "[c]apable of understanding, remembering and carrying out simple instructions over an eight hour work day with routine breaks." (R. 83). He noted that Arth's contact with co-workers, supervisors, and the general public should be "casual and non-confrontational" and that changes in her work

13

place should be introduced "slowly." (*Id.*) Dr. Williams's opinions are consistent with the ALJ's RFC determination and provide substantial support for his decision.

The medical evidence provides further support for the ALJ's decision. In particular, the Quality of Life mental progress notes between 2011 and 2014 consistently reflect that Arth had an appropriate affect, intact memory, average intellect, cooperative attitude, "gained" or "gained and maintained" attention, fair reasoning, fair insight, logical thought processes, and unremarkable thought content. (R. 325-26, 332-33, 341-42, 358-59, 375, 378, 382, 452-53, 471-74, 486-87, 494-95, 498-99, 502-03, 594, 597, 601, 620, 631, 639, 652, 666, 669, 680, 689). In addition, the medical records from Dr. Shehi and Dr. Herrera, who have been administering Arth's drug treatment programs, reflect that Arth has been compliant with treatment and has abstained from drug use since July 2013. (R. 514-26, 698, 704-05). The records are consistent with Arth's testimony at her hearing that, other than a single relapse in 2013, she had abstained from alcohol use for two and one-half years and from illegal/prescription drug use for almost two years. (R. 36-37).

In sum, the Court finds that the ALJ had sufficient medical evidence to make an informed decision and assess Arth's residual functional capacity. Arth has failed to show that the ALJ's failure to order a consultative psychological evaluation of her bipolar disorder prejudiced her to such a degree that the case

needs to be remanded for further development of the record. The record was fully developed and contained substantial evidence to support the ALJ's decision that she was not disabled.

## CONCLUSION

For the reasons set forth above, the decision of the Commissioner is due to be affirmed. A separate order consistent with this opinion will be entered.

**DONE**, this the 7th day of August, 2017.

_____
**JOHN E. OTT**
Chief United States Magistrate Judge